# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

### Appeal No. 20-2030
_____

## MARIA DOLORES MALDONADO-CABRERA; ANNELYS MALDONADO-CABRERA

Plaintiffs- Appellants

v.

## DR. JORGE ANGLERO-ALFARO; DR. EDGARDO BERMUDEZ-MORENO; HOSPITAL EPISCOPAL SAN LUCAS INC.

Defendants – Appellees

## SIMED; PUERTO RICO MEDICAL DEFENSE INSURANCE CO.; DR. REY PAGAN-RIVERA; JANE DOE; MARY DOE; LUCY DOE; ANN DOE; JOHN DOE; LIZ DOE; CONJUGAL PARTNERSHIP BERMUDEZ-DOE; CONJUGAL PARTNERSHIP SANTIAGO-DOE; COMPANIES A, B and C

Defendants
_____

## ON THE APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO
**The Honorable Raúl M. Arias-Marzuach, U.S. District Judge**
_____
_____

### BRIEF FOR PLAINTIFFS- APPELLANTS
_____

### MICHELLE ANNET RAMOS-JIMENEZ
First Circuit No. 1133343
michellean2000@yahoo.com
239 Arterial Hostos Avenue
Capital Center I, Suite 401
San Juan, PR 00918
Tel. (787) 763-1780/ Fax. (787) 763-2145

# TABLE OF CONTENTS

I.     JURISDICTIONAL STATEMENT…………………………………..2

II.    STATEMENT OF THE ISSUE……………………………….…2

     A. The District Court erred by dismissing the Complaint by incorrectly applying the prior-pending-action doctrine to the case.

III.   STATEMENT OF THE CASE…………………………………..2-5

IV.    STATEMENT OF THE FACTS……………………………..5-12

V.     SUMMARY OF THE ARGUMENT……………………….12-14

VI.    STANDARD FOR REVIEW………………………………..14

VII.   ARGUMENT AND CITATION TO AUTHORITY……………...14

VIII.  CONCLUSION……………………………………………...22

# TABLE OF AUTHORITIES

<u>**Cases**</u><span style="float:right"><u>**Pages**</u></span>

<u>Ashton Grove L.C. v. Jackson Walker L.L.P.</u>,
366 S.W.3d 790 (Tex. App. Dallas 2012)……………………...…………………..16

<u>Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio</u>
<u>v. Flores Galarza</u>,
484 F.3d 1, 22 (1st Cir. 2007)………………………….………………………….21

<u>Beaver v. Penntech Paper Co.</u>,
452 Pa. 542, 307 A.2d 281 (1973)……………………………………………...15

<u>Bayer v. Showmotion, Inc</u>.,
292 Conn. 381, 973 A.2d 1229 (2009)………………………………………15

<u>Barren v. Com.</u>,
2013 PA Super 224, 74 A.3d 250 (2013)………………………………………13, 15

<u>Cricket Cove Ventures, LLC v. Gilland</u>,
390 S.C. 312, 701 S.E.2d 39 (Ct. App. 2010)………………………………….16

<u>Cruz-Gascot v. HIMA</u>,
728 F. Supp. 2d 14. (D.P.R. 2010)…………………………………..3, 13, 16, 17

<u>Curran v. Cousins</u>,
509 F.3d 36, 43 (1st Cir.2007)…………………………………………….14

<u>Colorado River</u>,
424 U.S. at 819, 96 S.Ct. 1236)……………………………………………...… 19

<u>Clark v. Clark</u>,
93 A.D.3d 812, 941 N.Y.S.2d 192 (2d Dep't 2012)…………………….………16

<u>*DeMayo v. Nugent,*</u>
517 F.3d 11, 13 (1st Cir.2008)………………………………………..…14

Daul Ins. Agency, Inc. v. Jefferson Parish,
447 So. 2d 1208 (La. Ct. App. 5th Cir. 1984)……………………………………….13, 15

Fackler v. Powell,
839 N.E.2d 165 (Ind. 2005)……………………………………………………………13, 15

Figueroa v. Cestero,
321 F. Supp. 3d 259 (D.P.R. 2018)………………………………………………...18

Feliciano v. Rhode Island,
160 F.3d 780, 788 (1st Cir. 1998)…………………………………………………….21

*Gagliardi v. Sullivan,*
513 F.3d 301, 305 (1st Cir.2008)…………………………………………………..14

Geary v. Stanley,
2007 ME 133, 931 A.2d 1064 (Me. 2007)…………………………………….13, 15

Ito v. Investors Equity Life Holding Co.,
135 Haw. 49, 346 P.3d 118 (2015)……………………………………………...16

Jensen Const. Co. v. Department of Transp. and Development,
542 So. 2d 168 (La. Ct. App. 1st Cir. 1989), writ denied, 544 So. 2d 408
(La. 1989)…………………………………………………………………...13, 15

Kolodney v. Kolodney,
2 Conn. App. 697, 483 A.2d 622 (1984)………………………………………16

Liberty Mut. Ins. Co. v. Foremost–McKesson Inc.,
751 F.2d 475, 477 (1st Cir. 1985)……………………………………………………19

MacDermid, Inc. v. Cookson Group, PLC,
149 Conn. App. 571, 89 A.3d 447 (2014)……………………………………….13, 15

Montalvo v. Air Dock Systems,
37 A.D.3d 567, 830 N.Y.S.2d 255 (2d Dep't 2007)…………………………..13, 15

Meyer v. Meyer,
21 S.W.3d 886 (Mo. Ct. App. E.D. 2000)…………………………………….13, 15

Moses H. Cone,
 460 U.S. at 17 n.20, 103 S.Ct. 927……………………………………………….19, 20

Malave v. Centro Cardiovascular de Puerto Rico y Del Caribe,
485 F. Supp. 2d 6, 9-10 (D.P.R. 2007)………………………………………………..18

Perez–Acevedo v. Rivero–Cubano,
520 F.3d 26, 29 (1st Cir.2008)………………………………………………...…14

Penox Technologies, Inc. v. Foster Medical Corp.,
 376 Pa. Super. 450, 546 A.2d 114 (1988)…………………………………………16

Pasquantonio v. Poley,
834 F.Supp.2d 33, 37 (D. Mass. 2011)…………………………………………….20


Rancho Camille, S.A. v. Beachum,
596 S.W.2d 632 (Tex. Civ. App. Waco 1980)………………………………….13, 15

Ross v. Onyx Oil & Gas Corp.,
128 Mich. App. 660, 341 N.W.2d 783 (1983)…………………………………….13, 15

R.G. Fin. Corp. v. Vergara-Núñez,
446 F.3d 178, 182 (1st Cir. 2006)…………………………………………………….21

Sequa Corp. v. Aetna Casualty & Surety Co.,
1990 Del. Super. LEXIS 303 (Del. Super. Ct. Mar. 16, 1990)……………………18

Shoaf v. Shoaf,
219 N.C. App. 471, 727 S.E.2d 301 (2012)……………………………………..16

Trans–Spec Truck Serv. v. Caterpillar Inc.,
524 F.3d 315, 320 (1st Cir.2008)……………………………………………..14

Valle-Arce v. Puerto Rico Ports Auth.,
585 F. Supp. 2d 246, 253 (D.P.R. 2008)…………………………………...17

Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,
 915 F.2d 7, 16 (1st Cir. 1990) 424 U.S. at 819–20, 96 S.Ct. 1236…………………19

Weaver v. Early,
325 N.C. 535, 385 S.E.2d 334 (1989)…………………………………………..13, 15

**Statutes**

28 U.S.C.A. § 1291……………………………………………………………….2

28 U.S.C. § 1332……………………………………………………………….2

28 U.S.C. §1441…………………………………………………………...19

Articles 1802 of the Civil Code of Puerto Rico………………………………..2

Article 1803 of the Civil Code of Puerto Rico………………………………….2

**Rules**

Fed. R. App. P. 28.1(e)(2)(B)………………………………………...…23

Fed. R. App. P. 32(a)(7)(B)………………………………………………..23

Fed. R. App. P. 32(a)(5)…………………………………………………...23

Fed. R. App. P. 32(a)(6)…………………………………………………...23

Fed. R. App. P. 32(f)………………………………………………………23

Fed. R. Civ. P. 12 (c)……………………………………………..2, 14, 21

Fed. R. Civ. P. 12(b)………………………………………………………21

Fed. R. Civ. P. 12(b)(6)…………………………………………………14

Fed. R. Civ. P. 19…………………………………………………………..17

# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

**Appeal No. 20-2030**

_____

### MARIA DOLORES MALDONADO-CABRERA; ANNELYS MALDONADO-CABRERA

**Plaintiffs-Appellants**


**v.**

### DR. JORGE ANGLERO-ALFARO; DR. EDGARDO BERMUDEZ-MORENO; DR. BRYAN SANTIAGO-DIAZ; HOSPITAL EPISCOPAL SAN LUCAS INC.

**Defendants-Appellee**

### SIMED; PUERTO RICO MEDICAL DEFENSE INSURANCE CO.; DR. REY PAGAN-RIVERA; JANE DOE; MARY DOE; LUCY DOE; ANN DOE; JOHN DOE; LIZ DOE; CONJUGAL PARTNERSHIP PAGAN-DOE; CONJUGAL PARTENSHIP ANGLERO-DOE; CONJUGAL PARTNERHIP BERMUDEZ-DOE; CONJUGAL PARTNERSHIP SANTIAGO-DOE; COMPANIES A, B and C

**Defendants**

_____

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO
**The Honorable Raul M. Arias-Marxuach, U.S. District Judge**

_____

### BRIEF FOR PLAINTIFFS- APPELLANTS

_____

**TO THE HONORABLE COURT OF APPEALS:**

Come now the Appellants through the undersigned attorney and most respectfully submit their brief to this Honorable Court:

## I.     JURISDICTIONAL STATEMENT

This Court has jurisdiction over this matter under 28 U.S.C.A. § 1291 because it is an appeal from the district court's erroneous opinion and order granting Appellees' Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c). (App. G154-G167; App. H168).

## II.     STATEMENT OF THE ISSUES FOR REVIEW

**A. The District Court erred by dismissing the Complaint by incorrectly applying the prior-pending-action doctrine to the case.**

## III.     STATEMENT OF THE CASE

This appeal arises from the district court's incorrect application of the prior pending action doctrine to the case at bar and dismissal of the complaint under Rule 12 (c) of Federal Rules of Civil Procedure. (App. G154-G167; App. H168).

This is a civil action for the damages suffered by Appellants due to the negligent acts and omissions of all co-defendants in the treatment of   Gregoria Cabrera Bayanilla.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332 over the state law claims under Articles 1802 and 1803 of the Civil Code of Puerto Rico, sections

5141 et seq. of Title 31 of the Laws of Puerto Rico Annotated.  The matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states.

Appellants filed their Complaint on September 9, 2018 (App. B13-B25) alleging that the Appellees' negligence caused the death of their mother, in violation of Puerto Rico law**.**

Both Appellants have been residing outside of the jurisdiction of the Commonwealth of Puerto Rico for more than twenty (20) years. *(See Appellant Maria D. Maldonado's answer to interrogatory number 1, App.—D85, and Appellant Annelys Maldonado's answer to interrogatory number 4, App. D104).*

On August 15, 2018, a parallel case was filed in the Superior Court of Puerto Rico, Ponce Part, by different plaintiffs who resides in Puerto Rico.  The plaintiffs in the state case were the widower and the son of Gregoria Cabrera Bayanilla.

Appellants in the case at bar were included as plaintiffs in the Superior Court of Puerto Rico case, **solely regarding the survivorship claims due to the binding case law and legal requirements to adequately claim those type of damages** (See, Cruz-Gascot v. HIMA, 728 F. Supp. 2d 14. (D.P.R. 2010) **and their cause of action against Dr. Rey Pagan for their mental anguishes.**  Dr. Rey Pagan is not a party in the District Court case because he resides in the same state as the Appellants

3

(Docket no. 29).  Therefore, Appellants included their claims against Dr. Rey Pagan in the state case.

Both complaints contained the same allegations but requested different remedies and claimed different damages for different plaintiffs.

Summons on both cases were executed on the same date by the same process server (Docket No. 25); the calendar for discovery contained in the Initial Scheduling Conference Memorandum filed at Docket No. 41 was the same for the state case and all the depositions were taken with the appearance of the attorneys for the state and federal case.

After an extensive discovery and no unfavorable determination against Plaintiffs and Appellants in the state case by the Superior Court of Puerto Rico, Appellee Brian Santiago filed a *Motion for Judgment on the Pleadings or to Stay Proceedings* under Colordo River Abstention and the Prior Pending Action Doctrine on February 21, 2020 (App. C26-C76).

On March 4, 2020 Appellants filed their *Motion in Opposition to Motion for Judgment on the Pleadings or to Stay Proceedings* explaining in detail the reasons why the Colorado River Abstention and Prior Pending Action Doctrine does not apply to the case at bar (App. D77-D118).  On the same date, Appellee Dr. Jorge Angleró and Appellee Hospital Episcopal (Dockets No. 62 and 65).

On September 30, 2020, Appellee Brian Santiago filed a Supplemental Motion to his Motion for Judgment on the Pleading and the District Court entered and Opinion and Order on October 13, 2020 granting Appellee's motion without affording Appellants the opportunity to file a response in opposition. (App. F129-F153; App. G154-G167).

The District Court entered Judgment dismissing the case without prejudice on October 13, 2020. (App. H168).

The District Court ruling would mean that the Appellants will have to request permission to the state court to amend the Complaint, almost three years later, and include their causes of action against all defendants in the state case.

## IV.    STATEMENT OF THE FACTS

On September 6, 2017 at 10:45 pm Mrs. Gregoria Cabrera Bayanilla visited the Emergency Room of Sur Med Medical Center due to chest pain, nausea, sweating and general malaise.  She walked to the room and was unable to lie down in bed (a sign of orthopnea and compatible with heart failure). (App. B16, ¶ 13).

Mrs. Gregoria Cabrera medical history included arterial hypertension, diabetes mellitus and coronaropathy.  Her vital signs were: BP 230/53 mmHg, P 61/min, R 19/min, T 36.6 and oxygen saturation of 96%. (App. B16, ¶ 14).

The physical exam registered showed clear lungs, normal heartbeat, and no edema. She was alert and oriented. The diagnostic impression was acute chest pain. (App. B17, ¶ 15-16).

Mrs. Cabrera was transferred on an ambulance to the Emergency Room of co-defendant Hospital Episcopal San Lucas, Ponce. Her case was accepted by Dr. Pagan. Her vital signs before transferred were: BP 180/68 mmHg, P 63/min, R 19/min y 98% SpO2. (App. B17, ¶ 17).

Mrs. Cabrera arrived at the Emergency Room of co-defendant Hospital Episcopal San Lucas, Ponce, on September 7, 2017 at 12:40 a.m. She was received by the Triage nurse who took her vital signs and recorded: BP 152/62 mmHg, P 54/min, R 16/min, T 36.1 y 99% SpO2. She was oriented, alert and communicative. Her chief complaint was chest pain. According to her daughter, she was coughing constantly. (App. B17, ¶ 18-19).

Mrs. Cabrera was evaluated by emergency room physician, Dr. Rey Pagan Rivera, who documented the same chief complaint as the one documented by Sur Med and he documented that the sub lingual nitroglycerin and the Nitropatch administered at Sur Med had relieved the chest pain. The physical exam was normal. (App. B17, ¶ 20).

The diagnostic impression was acute coronary syndrome (ACS). Mrs. Cabrera was constantly coughing and presented frothy spit. (App. B17, ¶ 21).

6

The medical orders included: placed the patient in the stretcher with elevated handrails, take her vital signs, cardiac monitor, NIBP, nitroglycerin path, Zofran, EC and portable chest X-Ray.  The orders were taken by the nurse at 1:20 a.m.  An ECG was performed at 12:47 a.m. and read by Dr. Pagan and he found no changes compared to the ECG performed at Sur Med. (App. B17, ¶ 22; App. B18, ¶ 22-23).

Dr. Pagan consulted and presented the case to internal medicine Dr. Jorge Anglero Alfaro, who gave orders for admission.  Mrs. Cabrera was stable at that time.  The admission orders were standard for ACS.  In this case she was ordered admission under the services of Dr. Anglero. (App. B18, ¶ 24).

Mrs. Cabrera prognosis was reserved.  Vital signs were ordered every four hours x6 and then every eight hours until she got stabilized.  She was ordered diabetic diet; low sodium and the nutritionist was consulted. (App. B18, ¶ 25).

There are several therapeutic and diagnostic orders on the medical record.  However, the defendants did not ordered urinalysis, lipid profile, coagulation profile (PT, PTT, IRN),  CBC and the input and output of body fluids.  Consults were placed for cardiologist Dr. Cesar Cruz and endocrinologist Dr. Cesar Trabanco.  According to the medical record, those consults were not notified to the physicians by the nurses of co-defendant Hospital Episcopal San Lucas. (App. B18, ¶ 26-27).

At 3:10 a.m. co-defendant Dr. Anglero notes stated that Mrs. Cabrera had an episode of nausea and vomiting with gastric content without blood or "coffee ground". AN ECG was ordered and compared with the first ECG performed and it showed dynamic changes from the ST segment. A picture of the ECG was sent to the interventional cardiologist, Dr. Bermudez Moreno, who believed that there was no need for an immediate angioplasty. (App. B18, ¶ 28; App. B19, ¶ 28-29).

According to co-defendant Dr. Anglero's notes, Dr. Bermudez Moreno recommended aggressive treatment with anti-platelet therapy. The note also stated that Mrs. Cabrera was hemodynamically stable, her vital signs were recorded as: BP 149/67 mmHg, P 60/min y R 16/min. (App. B19, ¶ 30).

At 3:40 a.m. Mrs. Cabrera was transferred from the Emergency Room to the telemetry bed. Her vital signed reported by the nurse were: BP 90/51 mmHg and P 97/min. According to plaintiffs, Mrs. Cabrera was coughing up pink *("sangre clarita")*, the nurses responded that she might had a laceration. The coughing continued, with pain, constant sweating and difficulty breathing. One of Mrs. Cabrera's daughter requested assistance to the nurses, and they responded that they had to wait. (App. B19, ¶ 31-33).

At 5:39 a.m. a registered nurse documented a "Quick Response", in which she called green code due to a respiratory problem. The BP was 87/56 mmHg, Pulse 88/min and SpO2 of 95%. However, the reading of oxygen documented 62%

SpO2 with supplemental oxygen. Mrs. Cabrera was sweaty, unstable and her condition was estimated to get worse. (App. B19, ¶ 34).

At 5:46 a.m. internal medicine resident, co-defendant Dr. Bryan Santiago Díaz ordered an ECG "stat", portable chest X-Ray, discontinued intravenous fluids and a capillary glucose "stat". Co-defendant Dr. Bryan Santiago also ordered Foley placement, Lasix 40mg IV stat and head elevation over 60 degrees and a BiPAP. Orders were taken by the nurse at 6:60 a.m. (App. B20, ¶ 35-36).

At 5:56 a.m. co-defendant Dr. Bryan Santiago ordered arterial gases in an hour. The order was taken by the nurse at 6:60 a.m. The results of the arterial gases performed at 6:02 a.m. showed a severe acidosis with pH of 7.12(VN 7.35-7.45); PO2 of 42 mmHg (VN 80-100 mmHg) and SpO2 of 58% (VN 95-100%). (App. B20, ¶ 37).

Nurses' notes stated that the symptoms started when the nasogastric tube was placed. At the physical exam, bilateral rales in the pulmonary bases were examined. A BiPAP was placed immediately, Lasix was administered, and the head was elevated over 60 degrees. The arterial gases results were compatible with respiratory acidosis and the ECG performed at 6:60 a.m. was compatible with left bundle branch block which was present since admission of the patient. (App. B20, ¶ 38).

After co-defendant Dr. Bryan Santiago intervention, Mrs. Cabrera vital signs were: BP 108/58 mmHg, P 89/min, R 12/min and SpO2 of 98% on BiPAP.  Co-defendant Dr. Anglero was called but he could not be reach.  (App. B20, ¶ 39).

The first X-Ray performed to Mrs. Cabrera was not compatible with cardiac failure, pulmonary edema or pleural effusion.  In the second X-Ray performed were changes in the lower lobe of the right lung suggestive of vascular congestion and pleural effusion. (App. B21, ¶ 40).

At 8:30 a.m. there is a note of assistance to a cardiac arrest code called at 8:00 a.m.  The resuscitation team arrived, and compressions were started. According to the medical record, at 8:13 a.m. Dr. Velez intubated Mrs. Cabrera. She regained arterial pressure after epinephrine administration, but she suffered another cardiac arrest. Resuscitation measures were performed unsuccessfully, and Mrs. Cabrera died at 9:03 a.m. (App. B21, ¶ 41-43).

The Discharge Summary documented myocardial arrest (NSTEMI) as proximate cause of death.  The secondary diagnosis noted were acute pulmonary edema, hypertension, mellitis diabetes and CABG.  (App. B21, ¶ 44).

A nurse's note from Maria Vargas, without date or time, documented that a family member approach the counter referring that Mrs. Cabrera had respiratory difficulty.  Code green was called, and they started CPR.  CPR was discontinued,

and Mrs. Cabrera was declared dead. Life Link was called. She was declared dead by Dr. Romero. (App. B21, ¶ 45-46).

All co-defendants were negligent by failing to provide the medical attention required under the prevailing medical standards of care in the community. All co-defendants were negligent by failing to adequately diagnose and treat Mrs. Cabrera while she was under their care. All co-defendants were negligent by failing to follow the protocols required by the medical community in similar cases. They deviated from the accepted medical standards of care by failing to identify, diagnose and treat the condition of Mrs. Cabrera. (App. B22, ¶ 48-51).

All co- defendant deviated from the accepted medical standards of care by failing to identify, diagnose and treat Mrs. Cabrera. They were negligent by failing to perform the adequate studies to diagnose her condition; by failing to follow the medical orders, notify consults to physicians, obtained an informed consent form the patient and provide the adequate treatment for her medical condition. They deviated from the accepted medical standards of care observed in similar cases while treating Mrs. Cabrera. (App. B22, ¶ 52-53).

All co-defendants' acts and omissions are the proximate cause of the damages suffered by plaintiffs in this case. Co-defendants are jointly liable for all the damages suffered by plaintiffs in this case. (App. B22, ¶ 54; App. B23, ¶ 55).

Under the laws of the Commonwealth of Puerto Rico, all co-defendants are jointly liable for all the damages caused to plaintiffs by the negligence and medical malpractice of its agents, doctors, nurses and/or medical personnel who treated Mrs. Cabrera. (App. B23, ¶ 57).

All co-defendants had a duty to utilize due care and follow accepted medical standards in providing medical treatment and care to Mrs. Cabrera. All co-defendants breached their duty, were negligent and committed medical malpractice because the treatment provided to Mrs. Cabrera deviated from the accepted standards of care, wherefore all co-defendants are jointly liable for the damages suffered by plaintiffs. (App. B24, ¶ 63-64).

Due to the negligent acts and omissions of all co-defendants, plaintiffs Maria Dolores Maldonado Cabrera and Annelys Maldonado Cabrera have suffered and continue to suffer emotional distress, mental anguishes, pain and suffering due to the death of their mother, Mrs. Cabrera. Their damages are estimated in amount no less than $1,000,000.00. (App. B24, ¶ 65).

## V.    SUMMARY OF THE ARGUMENTS

Appellants in the caption case are also plaintiffs in the state case solely regarding the survivorship claims due to the binding case law and legal requirements to adequately claim those type of damages, and their cause of action against Dr. Rey Pagan, a party no longer included in the District Court case.  Appellants are not

claiming in the state case their personal cause of action against the defendants in the District Court case.

Therefore, a dismissal of the caption case will bar plaintiffs from recovering their own emotional damages suffered due to their mother's demise since these are different damages than the ones claimed in the state case.  See, <u>Cruz-Gascot v. HIMA</u>, 728 F. Supp. 2d 14. (D.P.R. 2010).

**The Prior- Pending Action Doctrine <u>does not apply in the case at bar</u>.  An action may be abated on the ground of another action pending, ordinarily, only where the relief sought in both actions is the same.**  In order that an action may be abated on the ground of another action pending, not only must the cause of action and issues involved be the same, but, as a general rule, the relief sought also must be the same or substantially the same in both actions. [1]

---

[1] <u>MacDermid, Inc. v. Cookson Group, PLC</u>, 149 Conn. App. 571, 89 A.3d 447 (2014), certification denied, 312 Conn. 914, 93 A.3d 597 (2014).; <u>Fackler v. Powell</u>, 839 N.E.2d 165 (Ind. 2005);  <u>Daul Ins. Agency, Inc. v. Jefferson Parish</u>, 447 So. 2d 1208 (La. Ct. App. 5th Cir. 1984); <u>Geary v. Stanley</u>, 2007 ME 133, 931 A.2d 1064 (Me. 2007); <u>Ross v. Onyx Oil & Gas Corp</u>., 128 Mich. App. 660, 341 N.W.2d 783 (1983); <u>Montalvo v. Air Dock Systems</u>, 37 A.D.3d 567, 830 N.Y.S.2d 255 (2d Dep't 2007); <u>Weaver v. Early</u>, 325 N.C. 535, 385 S.E.2d 334 (1989<u>)</u>; <u>Barren v. Com.</u>, 2013 PA Super 224, 74 A.3d 250 (2013) (lis pendens); <u>Rancho Camille, S.A. v. Beachum</u>, 596 S.W.2d 632 (Tex. Civ. App. Waco 1980); <u>Jensen Const. Co. v. Department of Transp. and Development</u>, 542 So. 2d 168 (La. Ct. App. 1st Cir. 1989), writ denied, 544 So. 2d 408 (La. 1989); <u>Meyer v. Meyer</u>, 21 S.W.3d 886 (Mo. Ct. App. E.D. 2000).

The District Court ruling would mean that the Appellants will have to request permission to the state court to amend the Complaint, almost three years later, and include their causes of action against all defendants in the state case.

## VI.    STANDARD FOR REVIEW

This Honorable Court reviews dismissals under Rule 12(b)(6) and judgments on the pleadings under Rule 12(c) de novo.  *See DeMayo v. Nugent*, 517 F.3d 11, 13 (1st Cir.2008). In doing so, the Court views the well-pleaded facts in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor. *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir.2008) (motion to dismiss); *Curran v. Cousins,* 509 F.3d 36, 43 (1st Cir.2007) (motion for judgment on pleadings). "[T]o survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that 'raise a right to relief above the speculative level.' " *Perez–Acevedo v. Rivero–Cubano,* 520 F.3d 26, 29 (1st Cir.2008) (citation omitted). Put differently, the Court will affirm a dismissal or judgment on the pleadings if the complaint fails to state facts sufficient to establish a "claim to relief that is plausible on its face." *Trans–Spec Truck Serv. v. Caterpillar Inc.,* 524 F.3d 315, 320 (1st Cir.2008) (citation omitted).

## VII.    ARGUMENT AND CITATION TO AUTHORITY

### A. The District Court erred by dismissing the Complaint by incorrectly applying the prior-pending-action doctrine to the case.

**The Prior- Pending Action Doctrine does not apply in the case at bar.  An**

14

**action may be abated on the ground of another action pending, ordinarily, only where the relief sought in both actions is the same.** In order that an action may be abated on the ground of another action pending, not only must the cause of action and issues involved be the same, but, as a general rule, the relief sought also must be the same or substantially the same in both actions. [2]

However, it has been held that even when the same relief is sought, courts may liberally construe the general rule and not dismiss a suit in order to protect a party.[3] Also, it has been said that the applicability of <u>the prior pending action doctrine does not turn on whether the two actions seek the same remedy</u>, but whether they are brought to adjudicate the same underlying rights. [4]

On the other hand, if the relief sought in one action is substantially different

---

[2] <u>MacDermid, Inc. v. Cookson Group, PLC</u>, 149 Conn. App. 571, 89 A.3d 447 (2014), certification denied, 312 Conn. 914, 93 A.3d 597 (2014).; <u>Fackler v. Powell</u>, 839 N.E.2d 165 (Ind. 2005); <u>Daul Ins. Agency, Inc. v. Jefferson Parish</u>, 447 So. 2d 1208 (La. Ct. App. 5th Cir. 1984); <u>Geary v. Stanley</u>, 2007 ME 133, 931 A.2d 1064 (Me. 2007); <u>Ross v. Onyx Oil & Gas Corp.</u>, 128 Mich. App. 660, 341 N.W.2d 783 (1983); <u>Montalvo v. Air Dock Systems</u>, 37 A.D.3d 567, 830 N.Y.S.2d 255 (2d Dep't 2007); <u>Weaver v. Early</u>, 325 N.C. 535, 385 S.E.2d 334 (1989<u>); Barren v. Com.</u>, 2013 PA Super 224, 74 A.3d 250 (2013) (lis pendens); <u>Rancho Camille, S.A. v. Beachum</u>, 596 S.W.2d 632 (Tex. Civ. App. Waco 1980); <u>Jensen Const. Co. v. Department of Transp. and Development</u>, 542 So. 2d 168 (La. Ct. App. 1st Cir. 1989), writ denied, 544 So. 2d 408 (La. 1989); <u>Meyer v. Meyer</u>, 21 S.W.3d 886 (Mo. Ct. App. E.D. 2000).

[3] <u>Beaver v. Penntech Paper Co., 452 Pa. 542, 307 A.2d 281 (1973)</u>
[4] <u>Bayer v. Showmotion, Inc., 292 Conn. 381, 973 A.2d 1229 (2009)</u>.

from that sought in the other,[5] the pendency of the one action generally cannot be pleaded in abatement of the other, as where the two actions are different as to nature and the objects to be accomplished.  For example, **actions that involve different damages**.

Appellants in the caption case are also plaintiffs in the state case solely **regarding the survivorship claims due to the binding case law and legal requirements to adequately claim those type of damages, and their cause of action against Dr. Rey Pagan, a party no longer included in the District Court case.  Appellants are not claiming in the state case their personal cause of action against the defendants in the District Court case.**

**Therefore, a dismissal of the caption case will bar plaintiffs from recovering their own emotional damages suffered due to their mother's demise since these are different damages than the ones claimed in the state case.**  See, Cruz-Gascot v. HIMA, 728 F. Supp. 2d 14. (D.P.R. 2010).

---

[5] Kolodney v. Kolodney, 2 Conn. App. 697, 483 A.2d 622 (1984); Ito v. Investors Equity Life Holding Co., 135 Haw. 49, 346 P.3d 118 (2015); Shoaf v. Shoaf, 219 N.C. App. 471, 727 S.E.2d 301 (2012); Clark v. Clark, 93 A.D.3d 812, 941 N.Y.S.2d 192 (2d Dep't 2012); Penox Technologies, Inc. v. Foster Medical Corp., 376 Pa. Super. 450, 546 A.2d 114 (1988); Cricket Cove Ventures, LLC v. Gilland, 390 S.C. 312, 701 S.E.2d 39 (Ct. App. 2010).
Ashton Grove L.C. v. Jackson Walker L.L.P., 366 S.W.3d 790 (Tex. App. Dallas 2012) (different damages).

Appellee Brian Santiago alleged on their *Motion for Judgment on the Pleadings* that Appellants are parties in the state case court and federal court cases.

The caption case was filed on September 9, 2018 and the parallel case at the Puerto Rico Commonwealth Court of First Instance in Ponce was filed on August 15, 2018. **Less than a month apart**. Both, against the same defendants but different plaintiffs due to diverse citizenship.

Appellants are also plaintiffs in the state case, **solely regarding the survivorship claims due to the binding case law and legal requirements to adequately claim those type of damages**. See, Cruz-Gascot v. HIMA, 728 F. Supp. 2d 14. (D.P.R. 2010).

If Appellants were to file the survivorship claim in the federal court, pursuant to **Fed. R. Civ. P. 19**, plaintiffs in the state case are <u>**necessary and indispensable parties to the survivorship claim,**</u> because as forced heirs, they are members of the decedent's succession. Since bringing them to this diversity case would destroy the District Court's original matter jurisdiction, Appellants' survivorship claim was filed in the Puerto Rico Commonwealth Court of First Instance in Ponce.

Furthermore, Appellee Brian Santiago argument in regard to "forum shopping" was incorrect. The term "**forum shopping**" refers to a plaintiff who "rushes to the federal courthouse **solely in reaction to its failure in the state court**, and in the hopes of obtaining a more favorable determination." <u>Valle-Arce v. Puerto</u>

17

Rico Ports Auth., 585 F. Supp. 2d 246, 253 (D.P.R. 2008) (citing <u>Malave v. Centro</u>

<u>Cardiovascular de Puerto Rico y Del Caribe, 485 F. Supp. 2d 6, 9-10 (D.P.R. 2007)</u>.

Forum shopping means filing an action in a location that a plaintiff considers

advantageous. <u>Sequa Corp. v. Aetna Casualty & Surety Co.</u>, 1990 Del. Super.

LEXIS 303 (Del. Super. Ct. Mar. 16, 1990).

As clearly stated above, Appellants did not rush to the federal court in reaction

to an adverse determination in a state case.  They filed the Complaint in the District

Court because they have the right to do so, the District Court has jurisdiction due to

diversity.

The caption case is almost identical to <u>Figueroa v. Cestero</u>, 321 F. Supp. 3d

259 (D.P.R. 2018) were the Court discussed:

> "*Here, the state and federal complaints involve nearly identical*
> *claims and nearly identical parties. Four of the factors are neutral*
> *in this case. Specifically, there is no res at issue (first factor);*
> *federal and state court here are equally convenient (second*
> *factor), see <u>Jimenez</u>, 597 F.3d at 28 (holding that the Puerto Rico*
> *forum is just as convenient as the federal forum); state law*
> *controls here, but the case does not present difficult state law*
> *questions (fifth factor); and the state "forum is well equipped to*
> *protect the parties' interests" (sixth factor).  Id. An additional*
> *factor, the fact that the state court complaint was filed before the*
> *federal court complaint only weighs slightly in favor of abstention*
> *because the two suits have both progressed substantially (fourth*
> *factor).*
>
> *With respect to the third factor—a desire to avoid piecemeal*
> *litigation—more than a mere aspiration for judicial efficiency is*
> *necessary to tip the sale in favor of abstention. The First Circuit*
> *has noted that* ***"[d]ismissal is not warranted simply because***

*__related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues__....” Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 16 (1st Cir. 1990) (citation omitted). Indeed, "something more than a concern for judicial efficiency must animate a federal court's decision to give up jurisdiction." Id. For example, in Colorado River, the Supreme Court relied on a federal statute whose primary policy was avoidance of piecemeal litigation regarding water rights. 424 U.S. at 819–20, 96 S.Ct. 1236. No such policy is at issue in this case. Nor is there a risk of harsh results like in Liberty Mut. Ins. Co. v. Foremost–McKesson Inc., 751 F.2d 475, 477 (1st Cir. 1985). In Liberty, a possibility existed that state and federal courts' differing interpretations of the same standard insurance policy language could result in a party finding itself without sufficient liability insurance coverage from the insurers after years of paying premiums. While this is an instance where two courts will indeed be deciding the same issues, it does not appear to involve the kind of piecemeal litigation contemplated by the cases above.*

*The seventh and eighth factors present the strongest support for abstention. The two factors are closely related and thus the Court considers them together. The seventh factor requires examination of the motivation behind the later-filed lawsuit. Villa Marina, 915 F.2d at 15. If the second suit is filed for vexatious or contrived reasons, it " 'may influence the decision whether to defer to a parallel state litigation under Colorado River.' " Id. (quoting Moses H. Cone, 460 U.S. at 17 n.20, 103 S.Ct. 927). Under the eighth factor, the Court must consider the principles underlying removal jurisdiction to determine whether surrendering jurisdiction is appropriate. Villa Marina, 915 F.2d at 14. When a plaintiff files a suit in state court, a defendant may, in certain circumstances, remove the case to federal court. 28 U.S.C. § 1441. The same is not true, however, of a plaintiff. As master of her claim, a plaintiff has a choice at the outset as to where she wants to file suit. If, after she files suit in state court, she then files a second, duplicative suit in federal court, she has effectively (and impermissibly) removed her case to federal court. Villa Marina, 915 F.2d at 14. Where the sole reason a plaintiff files a second suit in federal court is to effectively remove her earlier-filed case*

*from state court, it may result in a finding that the nature of her suit is vexatious or contrived and that it undermines the principals governing removal jurisdiction.  Id. at 14–15.*

*Here,* ***Plaintiff filed suit in the Puerto Rico Commonwealth Court of First Instance in Ponce on May 13, 2015 and then filed a nearly identical suit in this Court on October 20, 2015. Both cases involve claims of medical malpractice against the same defendants, although it is worth noting that the parties in the two cases are not identical****.  In her state court complaint, Plaintiff included her husband Gabriel Torres, their conjugal partnership, and her three siblings José, Gabriel, and Jacqueline Torres Hernández, none of whom are named in Plaintiff's federal court claim.  Plaintiff amended her federal claim to include PRMD as a defendant, but it is unclear based on the parties' filings whether she amended her state court complaint as well. Furthermore, the circumstances here are not as blatantly problematic with respect to the seventh factor as those in a case like* <u>Pasquantonio v. Poley</u>*, 834 F.Supp.2d 33, 37 (D. Mass. 2011), where it was apparent that the plaintiffs' initiation of a federal law suit was due to their displeasure at the speed—or lack thereof—of the state proceedings. Neither party here has suggested a reason behind Plaintiff's decision to file a second, nearly identical lawsuit and without such information, it is not possible to ascertain whether Plaintiff's conduct was vexatious or contrived.*

*Although the seventh and eighth factors present real concerns, ambiguity exists as to Plaintiff's motivation for filing a second suit in federal court. Given that " 'only the clearest of justifications will warrant dismissal,' " and considering the heavy presumption in favor of exercising federal jurisdiction,* ***the facts here are simply not sufficient to tip the scales in favor of abstention****.* <u>Moses H. Cone</u>*, 460 U.S. at 16, 103 S.Ct. 927 (quoting Colorado River, 424 U.S. at 819, 96 S.Ct. 1236)."*

A similar analysis applies to the case at bar, the facts presented in this case are not sufficient to tip the scale in favor of abstention.

Rule 12 (c) of the Federal Rules of Civil Procedure allows any party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c).  Despite the difference in timing between Rule 12 (c) motions for judgment on the pleadings, which are brought after the pleadings are closed, and Rule 12(b) motions to dismiss, which are brought before the pleadings are closed, "[t]he standard for evaluating a Rule 12 (c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion." Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 22 (1st Cir. 2007) (internal quotations omitted).

"Judgment on the pleadings under Rule 12 (c) may not be entered unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of her claim which would entitle her to relief." Feliciano v. Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998). "Because such a motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom." R.G. Fin. Corp. v. Vergara-Núñez, 446 F.3d 178, 182 (1st Cir. 2006). "There is no resolution of contested facts in connection with a Rule 12 (c) motion: A court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point." Id.

## VIII.   CONCLUSION

As outlined above, the District Court erred by dismissing the case under the Prior-Pending Action Doctrine and granting Appellees Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c).

The District Court ruling would mean that the Appellants will have to request permission to the state court to amend the Complaint, almost three years later, and include their causes of action against all defendants in the state case.

This Honorable Court should reverse the District Court's erroneous rulings and remand this case for trial.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 22nd day of March 2021.

**S/MICHELLE ANNET RAMOS- JIMENEZ**
**MICHELLE ANNET RAMOS- JIMENEZ**
**USDC-PR 225303**
**USCA NO. 1133343**
E-mail: michellean2000@yahoo.com
Capital Center 1, Suite 401
Arterial Hostos 239
San Juan, Puerto Rico 00918
Phone: 787-763-1780 | Fax: 787-763-2145

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief on behalf of Appellants, complies with Fed. R. App. 28.1 (e)(2)(B) and /or Rule 32(a)(7)(B) because it contains 5,374 words, including footnotes and excluding those items of the brief exempted by rule 32(f).  This brief also complies with the typeface requirements of Rule 32(a)(5) and the style requirements of Rule 32(a)(6) because the brief has been prepared in a proportionally spaced typeface in 14-point font in Times New Roman.

*S/ Michelle A. Ramos-Jimenez*
First Circuit No. 1133343

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**: That on this same date I electronically filed the foregoing Brief and corresponding Appendix with the Clerk of the Court using the CM/ECF systems which will send notification of such filling to all attorneys of record.

*S/ Michelle A. Ramos-Jimenez*
First Circuit No. 1133343

# INDEX OF ADDENDUM

OPINION AND ORDER......................................................................................1-14

JUDGMENT...........................................................................................................15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

MARÍA DOLORES MALDONADO-CABRERA,
ET AL.

     **Plaintiffs,**

        v.

JORGE ANGLERO ALFARO, ET AL.

     **Defendants.**

**CIVIL NO.** 18-1661 (RAM)

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

     Pending before the Court is codefendant Dr. Bryan Santiago-Díaz's *Motion for Judgment on the Pleadings or to Stay Proceedings* ("*Motion*") which requests that the Court abstain from the present medical malpractice action because plaintiffs María Dolores Maldonado-Cabrera and Annelys Maldonado-Cabrera are litigating identical claims and allegations in a pending state court case. (Docket No. 54). In the alternative, the *Motion* requests a stay of pending resolution of the state case or a dismissal of this federal case pursuant to the "prior-pending-action" doctrine. After reviewing the parties' arguments, the documents on record and the applicable law, the Court **GRANTS** the pending *Motion* pursuant to the prior-pending-action doctrine.

## I.    BACKGROUND

On August 15, 2018, Bolívar Maldonado-Colón, Luis Alberto
Maldonado-Cabrera, Migdalia Maldonado-Cabrera, Bolívar Maldonado-
Cabrera, Annelys Maldonado-Cabrera and María Dolores Maldonado-
Cabrera (collectively, "Ponce Plaintiffs") filed a claim in the
Superior Court of Puerto Rico, Ponce Part, Civil No. PO2018CV00625
for alleged medical malpractice resulting in the death of Mrs.
Gregoria Cabrera-Bayanilla ("Mrs. Cabrera"). *See* Luis Alberto
Maldonado Cabrera y Otros v. Hospital Episcopal San Lucas y Otros,
State Court Case No. PO2018CV00625, Docket Entry. 1 (hereinafter,
"State Court Case No. PO2018CV00625"). Specifically, the Ponce
Plaintiffs sued Hospital Episcopal San Lucas, Inc. ("HESL"), Dr.
Rey Pagán-Rivera, Dr. Jorge Anglero-Alfaro, Dr. Edgardo Bermúdez-
Moreno, Dr. Bryan Santiago-Díaz, the physicians' unnamed spouses,
their respective conjugal legal partnerships, and the physicians'
insurers Puerto Rico Medical Defense Insurance and Sindicato
Aseguradores para la Suscripción Conjunta de Seguros de
Responsabilidad Profesional Medico Hospitalaria ("SIMED"). Id.

On September 6, 2018, plaintiffs María Dolores Maldonado-
Cabrera and Annelys Maldonado-Cabrera (collectively, "Plaintiffs")
filed in federal court a negligence and medical malpractice lawsuit
pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code,
P.R. Laws Ann. tit. 31, §§ 5141-5142. (Docket No. 1). The suit was
filed against the same doctors as in the state court case, their

spouses and their conjugal partnerships, HESL, the same insurers and other unnamed defendants ("*Complaint*"). Id. Plaintiffs' request for damages in the *Complaint* is grounded on their continued suffering of "emotional distress, mental anguish, pain and suffering due to the death of their mother, Mrs. Cabrera." Id. at 12. The Court notes that their federal *Complaint* is silent on Plaintiffs' involvement in the pending state court case. Since the filing of the *Complaint*, several Defendants have been dismissed.[1] The remaining codefendants are Dr. Bryan Santiago-Díaz ("Dr. Santiago-Díaz"), Dr. Jorge Anglero-Alfaro ("Dr. Anglero-Alfaro"), Dr. Edgardo Bermúdez-Moreno and HESL.

On February 21, 2020, codefendant Dr. Santiago-Díaz filed the pending *Motion*. (Docket No. 54). He alleges that a stay of the federal case is proper because: (1) Plaintiffs are parties in cases both in state and federal court, and (2) this District Court has stayed similar cases regarding controversies involving Regional Academic Medical Centers ("RAMC") and then pending certifications to the Puerto Rico Supreme Court regarding damages caps. Id. at 7-12. Likewise, the Court should abstain from exercising jurisdiction pursuant to the Colorado River abstention doctrine.

---

[1] On November 20, 2018, the Court issued an Order dismissing the claims against SIMED and on July 19, 2019, it issued a Partial Judgment dismissing the claims as to Puerto Rico Medical Defense Insurance Company. (Docket Nos. 15 and 49). On December 10, 2018, the Court issued a Partial Judgment dismissing claims against Dr. Rey Pagan-Rivera. (Docket Nos. 29 and 49).

Id. at 12-21. Conversely, he alleges dismissal of the *Complaint* is warranted per the prior-pending-action doctrine. Id. at 21-24.

Codefendant Dr. Anglero-Alfaro then filed a *Motion for Joinder* stating that Dr. Santiago-Díaz's arguments "particularly as it relates to the application of the statutory caps to [Dr. Anglero-Alfaro] as part of its contractual participation in the '[RAMC]'" justifies his joinder request. (Docket No. 62 ¶ 1). Similarly, HESL also filed a *Motion for Joinder* averring that it "is a teaching facility and as such entitled to the immunity granted by Law 136 of July 27, 2006 known as "Ley de Centros Medicos Regionales de Puerto Rico [RAMC] subject of the motions and any such ruling will ultimately be applicable" to HESL. (Docket No. 66 at 1-2). The Court granted both motions for joinder. (Docket Nos. 67 and 68).

On April 13, 2020, Plaintiffs filed a *Motion in Opposition to Motion for Judgment on the Pleadings or to Stay Proceedings* ("*Opposition*") stating that they: (1) have been residing outside the Commonwealth of Puerto Rico for over twenty (20) years; (2) were included in the state case solely regarding the survivorship claim, thus both complaints request different remedies and damages; (3) the Colorado River abstention doctrine is inapplicable, and (4) the prior-pending-action is also inapplicable because the requested damages differ in both cases. (Docket No. 74). On April 24, 2020, Dr. Santiago-Díaz filed a *Reply*

4

to *Response in Opposition to Dr. Santiago-Díaz's Motion for Judgment on the Pleadings or to Stay Proceedings* ("*Reply*"). (Docket No. 77).

## II. DISCUSSION

For reasons discussed below, the Court agrees with Dr. Santiago-Díaz that the present suit should be dismissed per the prior-pending-action doctrine. (Docket No. 54 at 21-24). Thus, the Court need not consider his request for abstention under <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 818 (1976) ("<u>Colorado River</u>"). Suffice it to say that the First Circuit Court of Appeals ("First Circuit") has stated that "[o]f all the abstention doctrines, [<u>Colorado River</u>] is to be approached with the most caution" and with "'[o]nly the clearest justifications'" warranting dismissal. <u>Jimenez v. Rodriguez-Pagan</u>, 597 F.3d 18, 27 (1st Cir. 2010) (quoting <u>Colorado River</u>, 424 U.S. at 817). Dr. Santiago-Diaz's bid for <u>Colorado River</u> abstention was largely premised on the existence of unsettled issues of Puerto Rico law concerning application of the damages cap in the RAMC statute. (Docket No. 54 at 15-16, 18, 20-21). Those issues have since been settled by the Puerto Rico Supreme Court. *See* <u>Delca I. Ortiz Santiago, et al. v. Hospital Episcopal San Lucas, Inc., et al.</u>, 2020 TSPR 109, 15 (P.R. Sept. 18, 2020).[2]

---

[2] The Court notes that a certified translation of the Opinion was filed by Dr. Santiago-Díaz at Docket No. 82-1.

Under the prior-pending-action doctrine, "the pendency of prior action, in a court of competent jurisdiction, between the same parties, predicated upon the same cause of action and growing out of the same transaction, and in which identical relief is sought, constitutes good ground for abatement of the later suit." Rowayton Venture Grp. LLC v. McCarthy, 2020 WL 4340985, at *3 (D. Mass. 2020) (quotation omitted). Further, the First Circuit and courts within the First Circuit have generally held that "[w]here the overlap between the two suits is nearly complete, the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer." TPM Holdings, Inc. v. Intra-Gold Indus., Inc., 91 F.3d 1, 4 (1st Cir. 1996); Quality One Wireless, LLC v. Goldie Grp., LLC, 37 F. Supp. 3d 536, 540–41 (D. Mass. 2014) (quotation and quotation marks omitted)("[T]he suit filed first should have priority absent the showing of balance of convenience in favor of the second action."). However, the doctrine should not be "applied mechanically and will be rendered inapplicable, for example, when one party merely 'wins the race to the courthouse' or when the competing suits are filed within days of each other." Mercado-Salinas v. Bart Enterprises Int'l, Ltd., 2007 WL 9702143, at *5 (D.P.R. 2007) (quotation omitted).

Typically, a court may stay or dismiss a later-filed action under the prior-pending-action doctrine provided that: (1) there exists an identity of issues, and (2) the controlling issues in

the dismissed action will be determined in the other pending lawsuit. *See* 5C Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>*,* § 1360, at 89 (3d ed. 2004). In most instances, when facing a motion to dismiss due to the pendency of a prior action, "**federal judges do not base their power to entertain this type of motion on any specific rule or statute, but, as in the case of the motion to stay, speak only of their desire to promote judicial efficiency and to avoid conflicting opinions**." <u>Id.</u> (emphasis added). Courts within the First Circuit have also explained that the parties themselves do **not** have to be identical and instead they must have "sufficient congruence of interests." <u>Faith v. Truman Capital Advisors, LP</u>, 2020 WL 263534, at *4 (D. Mass. 2020) (citation omitted).

In the present case, the federal and state actions at issue are sufficiently analogous. While not all the Ponce Plaintiffs are present here, Plaintiffs *are* parties to the state case. Defendants are **the same** in both cases. Moreover, the controlling issues in this litigation will be determined in the pending state court case. Although presented with some additional facts, the state court case involves the same issues as its federal counterpart: Defendants' negligent actions and omissions which resulted in the death of Mrs. Cabrera. Notably, Plaintiffs here are *solely* seeking emotional damages stemming from their mother's death whereas the remaining Ponce Plaintiffs are seeking those in the state case,

too. In fact, Dr. Santiago-Díaz's *Reply* posits that precisely because the remaining Ponce Plaintiffs also brought forth personal damages claims, if the Court chooses to dismiss the present case, Plaintiffs could simply join the other Ponce Plaintiffs' existing personal damages claim. (Docket No. 77 at 5). Plaintiffs have not disputed the fact that the other Ponce Plaintiffs in the state case also requested personal damages. Nor have they proffered to the Court any reason why they could not join the pending personal damages claim in state court if their *Complaint* were dismissed. Further, all Ponce Plaintiffs, **including Plaintiffs**, are part of the survivorship claim in the state court suit. To wit, courts within the First Circuit have held that "**[w]hen it is possible that, through amendment, each action may contain all of the issues and parties presently contained in either action, the continuation of the first action to be filed is favored**." Bradeen v. Bank of New York Mellon Tr. Co., Nat'l Ass'n, 2018 WL 5792319, at *2 (D. Mass. 2018) (quotation omitted) (emphasis added).

In Bradeen, the District Court of Massachusetts held that the prior-pending-action doctrine was applicable in a case related to foreclosure and eviction because "[t]he state and federal complaints arise out of the same transactions, the parties seek **essentially the same relief in each suit, and resolution of the two cases will involve the same evidence**." Id. at *2 (emphasis added). The Court also explained that if the plaintiffs had

additional claims to make apart from those in the state complaint, they should have been "raised in the state court by amendment, not by filing a duplicative federal complaint that attempts to split their claims against defendants." Id. Along those same lines, Plaintiffs' attempt here to bifurcate their personal damages claim from those of the other Ponce Plaintiffs' fails because they *can* obtain full relief under the parallel case.

Many courts including those within the First Circuit also look towards the factors set out in Universal Gypsum of Georgia, Inc. v. American Cyanamid Co. to determine the applicability of the prior-pending-action doctrine. *See e.g.,* United States Fire Ins. Co. v. Equitas Ins. Ltd., 2019 WL 5457934, at *3 (D.N.H. 2019). The factors include:

> (1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of parties, counsel and witnesses; and (7) possibility of prejudice to a party as a result of the stay.

Laddawn, Inc. v. Bolduc, 2018 WL 7047647, at *4 (D. Mass. 2018) (quoting Universal Gypsum of Georgia, Inc. v. Am. Cyanamid Co., 390 F. Supp. 824, 827 (S.D.N.Y. 1975)). The majority of these factors strongly favor a stay or dismissal in the case at bar. Here, considering that all controlling issues in both cases may be properly adjudged by the state court, the principles of comity and

the convenience of the parties and witnesses weigh in favor of dismissal of this case in favor of the state court action.

In a similar scenario, and after analyzing the above-mentioned factors, the District Court of Massachusetts determined in Quality One Wireless, LLC v. Goldie Grp., LLC, that "[w]hile a federal court is capable of deciding the garden-variety questions of state law at issue […] the absence of complex issues of federal law suggests that a state court serves as an equally adequate forum for resolving the present dispute." Quality One Wireless, LLC, 37 F. Supp. 3d at 543. The Court then chose to apply the prior pending action and stay the federal case to save judicial resources, avoid inconsistent adjudication, and because its application did not prejudice the plaintiff in the second filed action. Id. In the case at bar, because Plaintiffs can attempt to join the other Ponce Plaintiffs' personal damages claim, a stay or dismissal of their *Complaint* does not seem prejudicial to any of the parties.[3]

Likewise, dismissing or staying the present case would undoubtedly conserve judicial resources because **most of the evidence in both cases will overlap**. Nowhere else is this clearer than when codefendant Dr. Santiago-Díaz filed a *Motion Requesting*

---

[3] *See* Colon Rivera v. Wyeth Pharm., 184 P.R. Dec. 184, 201 (2012) (explaining that both federal courts and Puerto Rico state courts follow a liberal approach to granting leave to amend pleadings) (citing Fed. R. Civ. P. 15 and 6 Wright, Miller and Kane, Federal Practice and Procedure: Civil § 1471 (3d ed. 2010)). The Puerto Rico Supreme Court also highlighted that the principal factor used to deny leave to amend a complaint is undue prejudice to the parties. Id. (citing Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 330-331 (1971)).

*Relief* wherein he requested that all Depositions be taken in English, or in Spanish with a translator so that they can be used in both cases. (Docket No. 50). Plaintiffs clarified in their opposition to Dr. Santiago-Díaz's *Motion Requesting Relief* that there is a "parallel case in the state court including identical claims with different plaintiffs and that the discovery plan proposed to this Honorable Court at *Docket Entry 34* was prepared in coordination with all the attorneys in both […] cases, <u>to avoid duplicity of testimonies, costs and expenses to all parties</u>." (Docket No. 51 at 1-2). The Court granted Dr. Santiago-Díaz's motion, explained that all subsequent depositions must be made in English or with an English interpreter, and stated that issue regarding the language in which the upcoming depositions were to be taken in was discussed with all parties from the federal and the local state case. (Docket No. 53). Lastly, the state court record shows that on June 25, 2020, the state court approved the revised deposition dates and discovery plan submitted by the parties on June 23, 2020. (State Court Case No. PO2018CV00625, Docket Entry. 69). *See* <u>AES Puerto Rico, L.P. v. Trujillo-Panisse</u>, 133 F. Supp. 3d 409, 415 (D.P.R. 2015) (holding that "documents on file in federal or state courts are proper subjects of judicial notice.") Notably, the revised discovery plan is **the same plan** submitted by the parties on June 24, 2020 and approved by this Court on that same date. (Docket Nos. 79 and 80). *See e.g.,* <u>Qutab</u>

v. Kyani, Inc., 324 F. Supp. 3d 243, 245–47 (D. Mass. 2018)
(staying the case after deciding that the application of the prior-
pending-action doctrine was proper given that "[a] determination
of the disputed facts will involve the same evidence, […] and will
be dispositive of the issues in both actions."); *see also* Curcio
v. Hartford Fin. Servs. Grp., 472 F. Supp. 2d 239, 243 (D. Conn.
2007) (granting dismissal per the prior-pending-action doctrine
after finding that "while the underlying theories of liability and
damages may be distinct, a substantial portion of the evidence
will necessarily overlap" and that it would "conserve the resources
of both the Court and the parties to try all of plaintiff's claims
in one proceeding.")

Finally, even when the doctrine may apply, such as here, a
Court does not have to defer to the state court action. Instead,
the doctrine "derives from a court's inherent power to control its
docket" and the decision of "whether to apply the doctrine in a
particular instance is a matter for the court's discretion."
Bradeen, 2018 WL 5792319, at *2. Courts in the First Circuit have
repeatedly applied it to either stay or dismiss a case in order to
avoid inconsistent judgments and promote judicial efficiency. *See*
United States Fire Ins. Co., 2019 WL 5457934, at *3; Qutab, 2018
WL 3849873, at *2-4; Bourne v. Gardner, 270 F. Supp. 3d 385, 388-
89 (D. Mass. 2017); Kersey v. Prudential Ins. Agency, LLC, 2017 WL
5162006, at *7-9 (D. Mass. 2017).

Thus, the remaining question is whether the pending case before this Court should be stayed or dismissed. Generally, "a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." Wilton v. Seven Falls Co., 515 U.S. 277, 288 n.2 (1995). Yet, dismissal is proper given that "plaintiff[s] could have amended [their] complaint in state court to add the causes of action raised here." Bourne, 270 F. Supp. 3d at 388–89. Further, considering that the state law issues concerning monetary caps of the RAMC statute have been resolved, **any determination that the state court makes regarding the amount of damages awarded to Plaintiffs, if any, will necessarily be binding on this Court.** Dismissal of the case at bar is therefore the best course of action to avoid a risk of inconsistent judgments regarding personal damages claims. Under the present circumstances and taking into account that Plaintiffs can amend the state court complaint which they admit states identical claims to the complaint herein, **dismissal without prejudice** of this duplicative action as to all remaining defendants is warranted.

### III. CONCLUSION

Dr. Santiago-Díaz's *Motion for Judgment on the Pleadings or to Stay Proceedings* (Docket No. 54) is **GRANTED**. Plaintiffs' *Complaint* is hereby dismissed as to Dr. Bryan Santiago-Díaz, Dr.

Jorge Anglero-Alfaro and Hospital Episcopal San Lucas, Inc. The Court *sua sponte* dismisses the *Complaint* as to Dr. Edgardo Bermúdez-Moreno as well. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of October 2020.

                              S/ RAÚL M. ARIAS-MARXUACH
                              United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

MARÍA DOLORES MALDONADO-CABRERA,
et al.

     **Plaintiffs,**

        v.

JORGE ANGLERO ALFARO, et al.

     **Defendants.**

**CIVIL NO.** 18-1661 (RAM)

**JUDGMENT**

Pursuant to the Opinion and Order entered today (Docket No. 84), judgment is entered **DISMISSING WITHOUT PREJUDICE** this action in its entirety.

This case is now closed for statistical purposes.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of October 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge

15